**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER FEWELL, | : | CIV. NO. 1:23-cv-00865 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| *Commissioner of the Social Security* | : | |
| *Administration*, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g). The plaintiff, Christopher Fewell ("Fewell"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g)

---

[1] Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

and 1383(c)(3). For the reasons set forth below, we recommend that the Court vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II. Background and Procedural History.[2]

We refer to the transcript provided by the Commissioner. *See docs. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, 10, 10-1, 11, 11-1, 12, 12-1, 13, 13-1, 14, 14-1.*[3] On June 5, 2019, Fewell protectively filed[4] applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since September 1, 2018. *Admin. Tr.* at 27. After the Commissioner denied his claim both at the initial level of administrative review and on reconsideration, Fewell requested an administrative hearing. *Id.* at 17. Accordingly, Administrative Law Judge ("ALJ") Scott M. Staller held a hearing on January 26, 2021, and a supplemental hearing on

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Fewell's claims.

[3] When citing the administrative transcript, we cite to the page numbers on the bottom corner of each page.

[4] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*. Here, the ALJ identifies June 5, 2019, as the date that Fewell protectively filed his application. *Admin. Tr.* at 17.

November 15, 2021, both via telephone. *Id.* At both hearings, Fewell was represented by counsel. *Id.*

The ALJ determined that Fewell had not been disabled from September 1, 2018 (the alleged onset date), through December 8, 2021 (the date of the decision). *Id.* at 27. And so, he denied Fewell benefits. *Id.* Fewell appealed the ALJ's decision to the Appeals Council, which denied his request for review on April 17, 2023. *Id.* at 1–6. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On May 24, 2023, Fewell, through counsel, began this action by filing a complaint claiming that the Commissioner's decision "is not supported by substantial evidence and is based on the incorrect application of legal principles and the application of incorrect legal principles." *Doc. 1* ¶ 13. He requests that the court reverse and set aside the Commissioner's decision or, in the alternative, remand the case to the Commissioner for further proceedings. *Id.* ¶ 14.

The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8–14*. The parties filed briefs, *see docs. 18, 20, 23*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports these findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Fewell was disabled but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or shew as last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[5] Unlike with disability insurance benefits under Title II of the Social Security Act "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged

---

[5] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Wydra met the insured-status requirements through December 31, 2022. *Admin. Tr.* at 17.

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, '"the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On December 8, 2021, the ALJ denied Fewell's claims for benefits. *Admin. Tr*. at 17–27. At step one of the sequential-evaluation process, the ALJ found that Fewell had not engaged in substantial gainful activity since September 1, 2018, his alleged onset date. *Id.* at 20.

At step two of the sequential-evaluation process, the ALJ found that Fewell had the following severe impairments: chronic fatigue syndrome, migraines, and

obesity. *Id.* The ALJ also found that Fewell had a number of non-severe impairments. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Fewell did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22. The ALJ noted that he specifically considered whether Fewell's chronic fatigue syndrome, migraines, or obesity, in combination with any other impairment, met any listing. *Id.*

The ALJ then determined that Fewell has the RFC to perform medium work[6] with some limitations. *Id.* Specifically, the ALJ found that Fewell "can never climb ladders, ropes, or scaffolds" nor can he be exposed to "unprotected heights or moving mechanical parts." *Id.* The ALJ also found that Fewell "can tolerate a loud noise environment" and "occasional exposure to atmospheric conditions, extreme cold and extreme heat." *Id.* In making this RFC assessment, the ALJ reviewed Fewell's assertions and testimony; his daily activity; his treatment records; and statements from Fewell's brother and mother. *Id.* at 22–23. He also considered medical opinions from: (1) Steven A. Golub, MD ("Dr. Golub"), an

[6] *See* 20 C.F.R. § 416.967(a) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.").

independent medical expert; (2) Wadicar Nugent, MD ("Dr. Nugent"), a state agency medical consultant; (3) David Paul Clark, MD ("Dr. Clark"), a state agency medical consultant; (4) Muhammad M. Jawaid, MD ("Dr. Jawaid"), the claimant's primary care provider; (5) Salvatore Cullari, PhD ("Dr. Cullari"), a state agency psychological consultant; and (6) Richard W. Williams, PhD ("Dr. Williams"), a state agency medical consultant. *Id.* 24–26. The ALJ found Dr. Jawaid's opinion unpersuasive. *Id.* at 25. But he found Dr. Golub's, Dr. Nugent's, and Dr. Clark's opinions partially persuasive. *Id.* at 24–25. And he found Dr. Cullari's and Dr. Williams' opinions persuasive. *Id.* at 25–26.

At step four of the sequential-evaluation process, the ALJ found that Fewell is able to perform his past relevant work as a survey worker and wrong address clerk. *Id.* at 26. He concluded that this work "does not require the performance of work-related activities precluded by [Fewell's] residual functional capacity[.]" *Id.*

Because the ALJ found that Fewell can perform past relevant work, the ALJ did not proceed to step five. He concluded that Fewell was not disabled from September 1, 2018, through the date of his decision on December 8, 2021. Thus, he denied Fewell's claims for disability insurance benefits and supplemental security income. *Id.*

## V. Discussion.

Fewell presents two claims. First, Fewell claims that the ALJ's step three analysis is not supported by substantial evidence. Fewell bases this claim on the ALJ's alleged failure to properly consider one specific impairment listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 ("the listings"). *Doc. 18* at 7–8. Second, Fewell claims that the ALJ also erred in evaluating his symptoms. *Id.* The Commissioner argues that the ALJ's decision was supported by substantial evidence, both in step three and when evaluating Fewell's symptoms. *Doc. 20*. Because we determine that Fewell prevails on his first claim, we do not reach the substance of his second claim.

### A. Step Three.

"In step three, the ALJ must determine whether [the plaintiff's] impairment matches, or is equivalent to, one of the listed impairments. *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)). "If the impairment is equivalent to a listed impairment, then [the plaintiff] is *per se* disabled and no further analysis is necessary." *Id.* (citing *Plummer*, 186 F.3d at 428). The Third Circuit "requires the ALJ to set forth the reasons for his decision[.]" *Id.* The purpose of this requirement "is to ensure that there is sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120). Thus, "an ALJ need not 'use particular language or adhere to a particular format in conducting analysis' so long as 'the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any [L]isting.'" *Gonzalez v. Saul*, No. 1:17-cv-02524 (PAZ), 2019 WL 13401378, *12 (D.N.J. Oct. 31, 2019) (alteration in original) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Moreover, "[p]ursuant to SSR 17-2p, the ALJ 'is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.'" *Shaw v. Saul*, NO. 20-517, 2020 WL 9349685, *9 (E.D. Pa. Oct. 28, 2020) (quoting SSR 17-2, 2017 WL 3928306, at *4 (Mar. 27, 2017)). Instead, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding" when accompanied by "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process[.]" SSR 17-2, 2017 WL 3928306, at *4. In other words, "the Court must determine whether the evidentiary discussion—regardless of its placement in the ALJ's decision—supports meaningful judicial review of the challenged Step Three finding(s) pursuant to the applicable legal standards."

*Gonzalez*, 2019 WL 13401378 at *12 (citing *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146–47 (3d Cir. 2007)).

Here, the ALJ's step three analysis reads in full:

> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> The undersigned also considered, pursuant to SSR 14-1p, whether the claimant's chronic fatigue syndrome, in combination with any other impairment, meets any Listing. While there is also no Listing for migraines, pursuant to SSR 19-4p, the undersigned considered whether the claimant's migraines, in combination with any other impairment, meets any Listing, such as Listing 11.02. Moreover, although there is no Listing for obesity, pursuant to SSR 19-2p, the undersigned considered whether his obesity in combination with any other impairment, meets any Listing.

*Admin. Tr.* at 22. Fewell argues that "[t]he ALJ's conclusory finding that Mr. Fewell's migraine headache impairment does not meet or medically equal the criteria of any listing is 'beyond meaningful judicial review.'" *Doc. 18* at 13 (citing *Burnett*, 220 F.3d at 119). Further, according to Fewell, "[b]ecause the ALJ did not make findings needed to determine if Mr. Fewell satisfied the criteria of Listing 11.02B, and because the record reflects evidence that would tend to support application of that listing, this case should be remanded." *Id.* (citing *Tyson v. Kijakazi*, 1:21-CV-855, 2022 WL 3975002, at *9–15 (M.D. Pa. July 25, 2022), *report and recommendation adopted*, 1:21-CV-00855, 2022 WL 3971041 (M.D.

Pa. Aug. 31, 2022)). The Commissioner argues that the ALJ's step three discussion "was entirely sufficient." *Doc. 20* at 13. Specifically, according to the Commissioner, the ALJ's conclusory statement in step three (above) is sufficient because "[t]he ALJ discussed the medical and other evidence relating to Plaintiff's headaches later in the decision." *Id.* We agree that the ALJ did not need to include more in his step three analysis. We disagree, however, with the position that the ALJ's discussion about Fewell's headaches later in the decision was sufficient.

"SSR 19-4p explains how primary headache disorders, like migraines, are evaluated at step three." *Tyson*, 2022 WL 3975002 at *10. As the ALJ stated in his decision, "there is . . . no Listing for migraines" (*Admin. Tr.* at 22), but Fewell's migraine impairment may match or be equivalent to one of the listed impairments, *see Burnett*, 220 F.3d at 119. "Epilepsy (listing 11.02) is the most closely analogous listed impairment for a[] [medically determinable impairment ("MDI")] of a primary headache disorder." *SSR 19-4p*, 2019 WL 4169635 at *7. "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." *Id.* "Thus, an ALJ should look to Listings 11.02B and 11.02D in assessing whether a claimant's migraine headache impairment medically equals a listing." *Tyson*, 2022 WL 3975002 at *10.

"Listing 11.02B describes dyscognitive seizures 'occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment.'" *Falardo-Weller v. Kijakazi*, NO. 3:22-CV-01026, 2023 WL 6119101, *6 (M.D. Pa. Sept. 18, 2023) (quoting 20 C.F.R. Part 404, Subpart P, App.1, § 11.02B). When, as here, a claimant has migraines, an ALJ should look to the following factors to determine whether that impairment medically equals listing 11.02B:

> [(1)] A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); [(2)] the frequency of headache events; [(3)] adherence to prescribed treatment; [(4)] side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and [(5)] limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4P, 2019 WL 4169635 at *7.

Listing 11.02D, on the other hand, "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one" of the following: "physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing

oneself." *Id.* In evaluating Listing 11.02D, ALJs will also consider "the same factors . . . consider[ed] for 11.02B[.]" *Id.*

Here, after considering the entirety of the ALJ's decision, we conclude that the ALJ has failed to set forth the reasons for his decision to allow for meaningful review. In his opinion, the ALJ notes Fewell's testimony about daily headaches which improved after ceasing over-the-counter pain medication, his May 2019 report to his primary care provider that he was not experiencing headaches, Fewell's "unremarkable" July 2019 brain MRI, and Fewell's report to a neurologist that his headaches were "completely gone." *Admin. Tr.* at 24–25. But the ALJ does not include an analysis of many of the factors associated with Listing 11.02. *See* SSR 19-4P, 2019 WL 4169635 at *7. He fails to include a detailed description of a typical headache, the frequency of Fewell's headaches after improvement, Fewell's adherence to prescribed treatment,[7] or the side effects of

---

[7] In the 11.02 listing, it is "require[d] that limitations from these neurological disorders exist despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. "Despite adherence to prescribed treatment means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." *Id.*

The Commissioner argues that "[t]he ALJ also cited to evidence reflecting that Plaintiff did not take the abortive migraine medication prescribed to him other than a few times, specifically that he had 'not needed sumatriptan, as his headaches have been well-controlled,' which is inconsistent with Listing 11.02's requirement for 'adherence to prescribed treatment.'" *Doc. 20* at 14. Fewell, however, correctly argues that "the ALJ never addressed this issue in his decision[.]" *Doc. 23* at 2

treatment. Because the ALJ failed to evaluate on the record the applicability of 11.02B and D, despite the record suggesting that Fewell may meet these requirements, "the ALJ's decision prevents the Court from conducting a meaningful, albeit deferential, review." *Fallardo-Weller*, 20223 WL 6119101 at *8. And the Commissioner has not argued that such error was harmless. *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) ("Ordinary harmless error review . . . is applicable to administrative appeals."). We thus find that the ALJ erred, and we recommend the court vacate his decision.

**B. Remand.**

Because the ALJ's decision is not supported by substantial evidence on the present record, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Fewell, as he requests in his complaint. *Doc. 1* ¶ 14. We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

---

(internal citations omitted). Moreover, the evidence to which the Commissioner refers establishes only that Fewell had not needed to take a medication which was prescribed to be taken *as needed*. *See Admin. Tr.* at 724, 814, 822. It is not clear to the court that this is clearly inconsistent with the Listing's requirement that "limitations from these neurological disorders exist despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1.

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.*

Here, there has not been excessive delay in the litigation of Fewell's claims, and we cannot say that substantial evidence on the record as a whole shows that Fewell is disabled and entitled to benefits. Thus, we recommend that the court remand the case to the Commissioner for further proceedings.

## VI. Recommendation.

Based on the foregoing, we recommend that the court vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may

also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of August 2024.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge